Good morning, Your Honor. I'm Eric Weaver, appearing on behalf of Petitioner Patterson. The argument that I originally prepared was severely curtailed by the recent Supreme Court case of Thaler v. Haines. I would agree that, for the most part, the Attorney General's letter to the Court was correct. The position that the lower court had taken in Haines' Fifth Circuit was that the inability to view the demeanor of the juror was a decisive factor. Could you lift your mic just a little? Yes, ma'am. There. Is that better? Yes. I think what Thaler v. Haines clearly says is it's just one factor among many and not a decisive factor. So the fact that the district judge here was not able to compare the demeanor of the jurors with the claims by the prosecutor is not a decisive factor. It's just one factor that the Court should look at. It was exactly the same situation as Rice v. Collins, where the prosecutor or the judge could not see whether the prospective juror, in that case a young woman, had rolled her eyes in answer to a question asked by the prosecutor, but said to the prosecutor, I'll give you the benefit of the doubt. The issue was not whether the judge was testing the credibility of the Vennire person, but of the attorney. And that's what was happening here. The judge should have zeroed in on the credibility of the prosecutor, not worried about whether he'd seen the demeanor of the Vennire person. Correct? That's what, yes, exactly. I think that's what Thaler says. I think in parentheses, although it's beyond this Court's purview, it highlights a problem with the way importing the Title VII three-step process. In my opinion, having a lot of experience in these Batson cases, it would be a lot easier for everyone involved if the rule were, when there's an objection made, reasons are asked for, the trial judge rules, it would take a minute or two, and there would be years and years of litigation and hundreds if not thousands of cases that are avoided. Returning to the second issue, the credibility, I realize that the standard is clear error. That's a very high standard. And I think that the issues reflecting the credibility of the prosecutor here were very thoroughly discussed by the briefs. I would just like to highlight a couple points. It's true that the Supreme Court has said that often the demeanor is the key factor. In my opinion, in this case, the only factor that favors finding that there was no discrimination is the demeanor of the prosecutor, as found by the magistrate. But as set forth in the briefs, there were numerous inconsistencies in his statement, which I think revealed that he was not, in fact, relying on his memory, but rather, in fact, had reviewed very carefully the record, put together reasons for that, but at certain times, because he was relying on the record and not on his actual memory, couldn't keep the story straight. I know the court has read the brief carefully, and I won't go through that. I think one thing that's really key is that both Mr. Whaley and the judge magistrate focused on the composition of the jury as a whole and said that prosecutors often look to the composition of the jury as a whole. Well, that's straight out of the Court of Appeals' opinion. And Mr. Whaley did not talk about the composition of the jury as a whole at trial. What he said was, there are reasons she stated, and then he was cut off by the judge. So he was referring to answers that she gave at the trial. It was apparent when it came to this hearing that that wasn't going to be sufficient, so he came up with these additional reasons. But the two reasons that he focused, that he allegedly focused on, were her answers to the questions about her employment and the concern about the prior murder case. On the face of it, especially the prior murder case, would seem to be a legitimate reason for excusing her. But he admitted at the evidentiary hearing that when he went through questions about that, he was satisfied with her answers because she acknowledged that justice had been done in that case. It gets complicated here because he'd passed on her. He'd left her on the jury when he had opportunities to knock her off. And the best I can figure, it's a combination of composition of the jury as a whole, but perhaps even more than that, having a peek at who the alternatives are. And I was a little confused as I tried to figure out the procedure used by the trial court here. The impression I was ultimately left with is that periodically the court would fill up the second box of or collection of, I think, six. And at that point, you'd have a glimpse into, okay, if I exercise a challenge on somebody who's in the box of 12 now, this is what I have to look to is who's going to fill in that slot. And that changed over time. Now, is that impression correct? Yes. They would call 18 jurors, 12 of whom would be seated, and then the remaining six would be the next six that would come up. And at some point in time, they refreshed the six. Exactly. So it is true that he could see into the future who the likely jurors were. But there was a lot of emphasis at the evidentiary hearing about him trying to get other jurors, specifically Juror Owens, who he said was the other African-American juror, although the trial transcript says it was Juror Duke. So there's some confusion there. But I submit, as I said in the briefs, there is no way he could have left. He was a very competent and very experienced prosecutor. I'll give him that. There's no way an experienced prosecutor would have left any of those jurors on the panel, regardless of who was coming up. All of them had expressed very severe issues that are very plain from the record that would have made them very bad prosecution jurors, especially Johnson, who he specifically said he was trying to get rid of. He got rid of to get Ms. Owens. There is no way he would have left her on there. He was so hostile. You can feel the hostility coming off the transcript. So I know the Court has read all these reasons, and I don't need to reiterate them. But I think I just want to sum up. I think that what you have here is demeanor on one side, numerous inconsistencies on the other side. And I respectfully submit that the judge magistrate put too much emphasis on demeanor and didn't look at all the inconsistencies, most notably his emphatic statement that I know what jury looks like, and he had no idea what she looked like. I see I have three minutes left. I'll reserve the rest of them unless the Court has some questions. That's fine. Good morning, Your Honors. I'm Kenneth Sekoler, Deputy Attorney General for the State of California for Appley. I agree with counsel that the Supreme Court resolved the central issue in this case with its ruling in Thaler v. Haynes. All that's left in this case is appellant's attempt to relitigate the evidentiary hearing decision before this Court. But that is not the role of the appellate court. The district court had in front of it the prosecutor who testified. He was extensively cross-examined as well. He gave detailed explanations as to his reasons for striking the juror in question, and the district court found him credible. There was nothing inherently implausible about his explanations, certainly nothing that would overcome the very steep standard that appellant faces here in trying to overcome. You, counsel, you must admit that he was kind of inconsistent in his testimony. At first he was saying he wanted to get Duke. Well, Duke was already on the panel. Yes, Your Honor. But it's hardly surprising that eight years later he initially was in error of which specific juror that was sitting in the box of six. Maybe he's trying after the fact. It's very hard, I admit, eight years later to know nobody's really operating from clear memory. I think that's clear eight years later. He's had many, many cases. So he's trying to somehow justify it. So he says Duke. Well, if he'd been looking at the transcript and so forth a little more carefully, he would have realized that Duke was there. So it seems to me that this kind of ad hoc rationalization perhaps. Well, Your Honor, I would submit that that kind of credibility determination is exactly what we have in evidentiary hearing and put the attorney in front of, in this case, the magistrate judge to decide. The magistrate judge was able to have the prosecutor in front of him, was able to judge the credibility. What's more, I don't think it's so suspicious that the prosecutor initially mentioned the wrong juror. What was consistent was the prosecutor immediately recalled that the next juror in line was someone who he thought would make a much better juror in this panel than R.E., the juror that he excused. It turned out it was Juror Zamsu instead of Juror Duke. But the reasons he had, he thought it was a better juror. He thought that this juror was more likely to be a leader, to command the respect of other jurors, was consistent. And to say that just the magistrate's judge's decision on credibility was clearly erroneous because the prosecutor initially named the wrong juror as the one that he thought would be a better leader. Well, that's not the only basis for claiming that the magistrate's credibility determination was erroneous. Counsel has pointed out that the prosecutor left on the jury persons who were clearly hostile to the prosecutor. Shouldn't we do a sort of a cross-analysis, as recent cases have told us, to find out whether there's some basis to what counsel says? Well, I think that the point of a comparative analysis is to compare the reasons for the struck juror with the reasons for jurors who were left on the jury. The prosecutor's reasons for, as stated at the evidentiary hearing, for striking this juror had to do with her demeanor and the way she was interacting with other jurors. He was a weak, weak juror. Yes, Your Honor. And he gave very specific reasons. It wasn't just her demeanor in terms of, oh, she was scowling. He was watching the jurors from the moment they walked in. This was a very experienced prosecutor. But shouldn't the prosecutor get off the jury jurors who were hostile before he got jurors who were weak? Well, I believe that he kicked the juror – he excused the jurors who were obviously hostile. There was one who didn't want to be questioned about his job and his friend's jobs. There was another who said he had been with certain people in the Del Paso Heights area of Sacramento where they'd all been sprawled out by the police. I don't see there any jurors left on who were explicitly hostile. And if we're doing a comparative analysis, we have to compare apples to apples. And the – Well, counsel, there's another odd thing about this case. He passed that juror twice as being okay, and it wasn't until another black juror came on to the jury that he dismissed her. So what do you make of that? Well, Your Honor, that was the reason that the district court here originally found a prima facie showing and insisted on having an evidentiary hearing where the prosecutor could explain his explanations. But I believe that the prosecutor's explanation that he gave in the evidentiary hearing was completely plausible, which was, before that, that he thought this seemed to be the best jury that he could get. But after that, another six-pack – another group of six alternate jurors came in. And at that point, now he has the opportunity to get what he regards as more favorable jurors onto the panel. So he excuses what he regards as his weakest juror, R.E. One other question I have, counsel. What standard did the State apply? Were they applying Wheeler or Batson? They were applying – they were applying Wheeler, which the California courts had said was – was – complied with Batson, but Federal authority subsequently said it didn't. And that's why we didn't have the 2254d deference standard on the prima facie issue on this case. But we're well beyond that, and we're at the third stage here of evaluating the prosecutor's reasons. And so I apologize if our brief was confusing. The 2254d deference standard doesn't apply to the analysis we're using here, because we're actually looking at the Federal district court's decision in the evidentiary hearing, specifically to see whether its factual finding of credibility was clearly erroneous. As I was saying, he gave a very detailed explanation of why he excuses juror. And it wasn't just demeanor in terms of she's scowling or she looks mean. He noticed that when she came in and when court wasn't – she was not interacting with other jurors, which was something that he looked at to see whether jurors were engaged, because he liked jurors who interacted with others that he thought they would be able to deliberate and work with the other jurors. He also said that during the voir dire of other jurors, she wasn't watching, she wasn't following what was going on. She wasn't looking at the judge. When the judge would ask questions, she wasn't looking at the other jurors. And he said most jurors do this in voir dire. And to him, this was an indication that she wasn't interested in the process. He also mentioned that she wasn't making eye contact with him during voir dire and was giving a lot of yes, no, very brief answers, which if you look at the transcript, the transcript bears that out. So he gave very specific – specific notes about the various jurors. Well, it seems that the prosecutor took very detailed notes, which was how he was able to jog his memory about this case. But what did he say about her? I don't recall offhand, Your Honor. In closing, however, there was nothing – there was nothing profoundly implausible about his stated reasons. In fact, it sounds perfectly reasonable. And there's nothing here to meet the high standard that this Court would require for revisiting the district court's credibility determination. In fact, in those instances where cases are sent back either on appeal or on habeas for a prosecutor explaining their reasons, it would serve justice well if all the jurors had such recall of their challenges. This prosecutor had sound reasons for striking the juror in question, and there has been no showing that the credibility determination was clearly erroneous and should be relitigated by this Court. Unless there are any further questions, I'll submit on the briefs. Apparently not. Thank you. Turning to your question first, Your Honor, on his notes, the prosecutor noted two questions from the – sorry, two questions from the questionnaire. One was about her employment, which he just didn't understand what it was, and he asked her about that. And then the second was the question about the murder of her friend 40 years earlier, and he said at the evidentiary hearing her answer to both questions dissatisfied her. So from her notes, his notes, there's no indication of a reason to get rid of her. I think also that the people are asking for a double standard here in terms of this Court's evaluation of the record. On the one hand, whenever there's an inconsistency, they take the position, well, it's understandable after eight years that he wouldn't have a recollection. But on any factor that he says that he testified to that favors this decision, we should take it as carved in stone and absolutely true. And I think that it has – the evidence has to be evaluated in its totality in light of the eight years and in light of all the inconsistencies. And although the Court is very familiar with this, the standard for evaluating for a clearly erroneous evidentiary finding is set forth in the case of the famous U.S. Supreme Court case. And it says, the finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. And I think that while it's true that you show deference to the evidentiary findings of the judge magistrate, you don't – evidence is not a blank – or excuse me, deference is not a blank check. And I think the – as I said at the beginning, and I still stand by it, on the one hand, you have the judge magistrate's evaluation of the demeanor, and on the other hand, you have all the inconsistencies in the record. And I think the inconsistencies in the record are sufficient to find that this was a clearly erroneous finding. Unless the Court has further questions. Your standard as to what is clear, do you see that that was at all changed by Hinkson v. USA in bank ruling? You know, I'm sorry, Your Honor. I'm not familiar with that case, so I'd be happy to send you a letter if you'd like me to. Don't worry about it. Okay. Thank you, Your Honors. Thank you. The case just argued is submitted. We thank both counsels for their helpful arguments.
judges: Fletcher B. , Clifton, Bea